## LONG v WHARTON

Ohio Appeals, 9th Dist, Summit Co

No 2660. Decided May 29, 1936

Lahrmer & Hadley, Akron, for plaintiff in error.

R. H. Nesbitt, Akron, for defendant in error.

### OPINION

By STEVENS, J.

This was a malpractice case, brought against defendant by plaintiff to recover damages for injury alleged to have been sustained by plaintiff because of defendant's failure to render proper postoperative treatment to plaintiff after a tonsillectomy and adenoidectomy. This case is before this court upon error, the positions of the parties being the same as in the trial court.

The record discloses that on September 5, 1931, defendant was employed to remove the tonsils and adenoids of plaintiff, and that upon said date defendant operated upon plaintiff at about 9:30 o'clock A. M.; that thereafter plaintiff was taken to his home. and at about 5:30 P. M. of the same day, as recited in the petition, "plaintiff showed such symptoms of distress that his parents were caused thereby to call the said defendant at his home and request that he immediately call on the plaintiff for the purpose of ascertaining if all was as it should be; that at said time the said defendant refused to call on the said plaintiff; that the plaintiff's condition from then on continued gradually to become worse and that at 8 o'clock A. M., on the following morning, the plaintiff's parents again called the defendant and requested him to come immediately; that the said defendant again refused to come himself but said he would send his assistant; that at 9:30 o'clock A. M., the said assistant called and immediately ordered the plaintiff sent to the hospital; that at the time that the defendant was first called the plaintiff had suffered a hemorrhage from the throat and that he continued to bleed freely during the night and until the said assistant called; that had the said defendant come when notified that steps could have been taken to have prevented the loss of blood which plaintiff suffered; that due to said loss of blood the said plaintiff became so weakened, devitalized and exhausted that it was necessary to have a blood transfusion performed; that as a result of the said weakness, devitalization and exhaustion the plaintiff's resistance to infection was so lowered that shortly after the said blood transfusion was performed he developed an abscess on his back; that shortly thereafter he developed abscesses on his right arm; that shortly thereafter he developed abscesses in his ears; that shortly thereafter he developed an infection in the lungs; that all of these abscesses had to be opened and drained and that by reason of the foregoing he was confined to the hospital for a period of about 18 days; that he was then brought home from the hospital and thereafter was confined to his bed at his home for a period of 6 weeks. That since said time he has been weak and his state of health has been below the normal condition of health which he would have enjoyed had the foregoing circumstances not occurred and that he will continue to be in a weakened and unhealthy condition for a long time to come by reason thereof."

At the conclusion of the case, defendant requested the court to submit to the jury a special verdict prepared by counsel for defendant, which the court refused to do, but the court did submit to the jury a special verdict prepared by the court, in the following form:

"We, the jury, being duly impaneled and sworn to find the issues in this case, do now, in accordance with the instructions of the court to find and return a special verdict, therefore find the facts upon the issues raised to be the following:

"We find that Doctor Wharton was the family physician for the family of which this plaintiff was a member; that about 9 o'clock in the morning of Saturday, Sept. 5, 1931, an operation for tonsils and adenoids was performed in Dr. Wharton's office after administering a general ether anaesthetic, and resting the plaintiff on a cot at the office, after which the boy was taken home, where he was put to bed and at about 2:30 in the afternoon the boy was found to be restless, pale, threshing about in bed, feverish and spitting out a mixture of saliva and bright red blood, and that said condition continued; that at about 5:30 the father called the defendant doctor by telephone and advised him about the condition of the boy as he observed it and suggested that he thought maybe the doctor should come out and attend the patient; the doctor or father suggested a dose of paregoric to quiet the boy, which was later administered by the father and the doctor indicated it was unnecessary in his opinion to attend the patient and did not attend the patient.

"We find that the informtaion conveyed to the doctor by the father in the first telephone call concerning the plaintiff's condition was such information that would/ would not have caused the attendance in person or by an associate of a physician using the ordinary skill, knowledge and care possessed and used by doctors in the community at that time, engaged in the same kind of practice.

"We do/do not find that had the doctor attended the boy following the call Saturday evening, the boy would not have experienced the ill effects following later.

"We find that the infectious condition of the plaintiff which became apparent after the Saturday telephone call damaged the plaintiff in the sum of .........Dollars, and we do so render this special verdict

upon a concurrence of ......members of our jury, that being three-fourths or more of our number, and the jurors concurring in said verdict hereto sign their names this ........day of March, A.D. 1935."

The jury returned said verdict as follows:

"We, the jury, being duly impaneled and sworn to find the issues in this case, do now, in accordance with the instructions of the court to find and return a special verdict, therefore find the facts upon the issues raised to be the following:

"We find that Doctor Wharton was the family physician for the family of which this plaintiff was a member; that about 9 o'clock in the morning of Saturday, Sept. 5, 1931, an operation for tonsils and adenoids was performed in Dr. Wharton's office after administering a general ether anaesthetic, and resting the plaintiff on a cot at the office, after which the boy was taken home, where he was put to bed and at about 2:30 in the afternoon the boy was found to be restless, pale, threshing about in bed, feverish and spitting out a mixture of saliva and bright red blood, and that said condition continued; that at about 5:30 the father called the defendant doctor by telephone and advised him about the condition of the boy as he observed it and suggested that he thought maybe the doctor should come out and attend the patient; the doctor or father suggested a dose of paregoric to quiet the boy, which was later administered by the father and the doctor indicated it was unnecessary in his opinion to attend the patient and did not attend the patient.

"We find that the information conveyed to the doctor by the father in the first telephone call concerning the plaintiff's condition was such information that would have caused the attendance in person or by an associate of a physician using the ordinary skill, knowledge and care possessed and used by doctors in the community at that time, engaged in the same kind of practice.

"We do not find that had the doctor attended the boy following the call Saturday evening, the boy would not have experienced the greater part of the ill effects following later.

"We find that the infectious condition of the plaintiff which became apparent after the Saturday telephone call damaged the plaintiff in the sum of Five Thousand Dollars, and we do so render this special verdict upon a concurrence of ten members of our jury, that being three-fourths or more of our number, and the jurors concurring in said verdict hereto sign their names this 27th day of March, A.D. 1935."

The question is thus presented whether the special verdict returned by the jury, determined the issues presented with sufficient clarity to properly enable the court to render judgment for the defendant thereon.

It will be observed that the third paragraph of said special verdict found facts from which would be drawn the legal conclusion that defendant was guilty of negligence.

Under that finding, if the jury found also that said conduct of defendant was the proximate cause of part or all of plaintiff's resultant damage, then the only question left for determination would have been the amount of said damages.

However, the jury, in the fourth paragraph of said verdict, "do not find that had the doctor attended the boy following the call Saturday evening, the boy would not have experienced the greater part of the ill effects following later."

As two negatives equal a positive, the finding may be interpreted to mean that the jury found that even had the doctor attended the boy following the telephone call Saturday evening, the boy would have experienced the greater part of the ill effects following later, or it may be interpreted to mean that had the doctor attended the boy after the telephone call, the lesser part of the ill effects would not have been suffered by plaintiff, without making any finding as to the greater part.

The only possible construction which could serve as a predicate for a judgment for the defendant is that, as the jury found that the greater part was not caused by the negligence of the doctor and failed to find that the lesser part was so caused, there was a failure of plaintiff to sustain the burden of proving by a preponderance of the evidence that any part was caused by the defendant's negligence.

We do not find that such a construction is any more warranted than the possible construction hereinbefore mentioned.

Did such finding possess sufficient clarity to enable the court to enter judgment thereon for either party to the action?

Certainly no judgment could have been rendered for plaintiff, because, under the verdict, the portion of the ill effects attributable to defendant's failure to attend plaintiff is unknown.

436

"A special verdict must directly, fairly, and fully respond to the material issues in the case, and should be sufficiently certain to stand as a final decision of the special matters with which it deals. The conclusions of fact must be so presented that nothing remains to the court but to draw conclusions of law from them and enter judgment accordingly. **If it is not sufficiently certain to support a judgment it cannot stand * * *.**"

27 R.C.L., "Verdict," §51, p. 877.

The verdict, being susceptible of two interpretations, one of which would result in a judgment for defendant, and one of which would indicate that judgment should be entered for plaintiff, but in an amount unknown, because there was no finding of damages for less than all of plaintiff's injuries, it must necessarily be concluded to have been so ambiguous as to disenable the trial court to render judgment upon that verdict.

Our conclusion in said respect is not in conflict with the pronouncement of the Supreme Court in **Neseda v Delmul, 123 Oh St 647,** syllabus 2, because in the instant case there is a finding on all of the issues but in such an ambiguous manner as to prevent concluding with any degree of assurance just what was meant by the jury.

It seems to us to be properly inferable from the wording of the special verdict that the jury meant to find that the lesser part of the ill effects which plaintiff suffered was proximately caused by the conduct of the defendant.

Under the instructions given by the court, in pursuance of the jury's inquiry, that the third question presented in the special verdict had nothing whatsoever to do with the first two questions propounded, it seems to us fairly apparent that the jury was misled and confused thereby.

That conclusion is strengthened by the fact that the jury at the same time was instructed to assess damages "in any event," and did so assess damages, even though, under §11420-19, GC, it was required to assess the amount of damages only when by the verdict either party was entitled to recover money from the adverse party.

Noseda v Delmul, supra, syllabus 3.

It seems to use that the second question presented might have been answered in a way indicating that part instead of all of plaintiff's injuries were caused by defendant's conduct, in which event that answer would have had a very material bearing upon the answer to the third question, relative to damages.

Concluding, as we do, that the jury was confused by the instructions given by the trial court, and being further of the opinion that the verdict returned was too vague and indefinite to permit of the entry of a judgment thereon, the judgment of the Court of Common Pleas is reversed, and the cause remanded for further proceedings according to law.

FUNK, PJ, and WASHBURN, J, concur in judgment.